1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

10
11
12
13
14
15
16
17
18
19
20

DERWIN LEE BUTLER,                    ) ED CV 12-1187-SH
                                      )
              Petitioner,             ) MEMORANDUM DECISION
                                      )
                                      )
      v.                              )
                                      )
M.D. McDONALD, WARDEN,                )
                                      )
              Respondent.             )
_____ )

21
22
23
24
25
26
27
28

## I.  INTRODUCTION

Derwin Butler [Petitioner] a prisoner in the custody of the California Department of Corrections, raises a single ground for relief in the present §2254 Petition: that the trial court abused its discretion in failing to appoint new counsel to investigate his claims of ineffective assistance of counsel for purposes of a new trial motion.  The California Court of Appeal rejected this claim in a reasoned opinion.  The State courts' denial of the claim was reasonable and precludes relief.

1

## II.  **PROCEDURAL HISTORY**

A jury found petitioner guilty of three counts of robbery, three counts of assault with a firearm, burglary and child endangerment in violation of California Penal Code Sections 211, 213.254(a)(2), 459 and 273a.  The jury found true the allegations that petitioner personally used a firearm, personally discharged a firearm, and personally used a semi-automatic handgun.  (Lodgment 2 at 1 CT 190-191.)  Petitioner was sentenced to thirty-five years and four months in State prison.  (Lodgment 2 at 1 CT 294-295; 2 CT 315-316).

Petitioner appealed.  (Lodgment 3)  On September 29, 2011, the California Court of Appeal affirmed the Judgment. (Lodgment 6)  Petitioner filed a Petition for Review (Lodgment 7).  On December 21, 2011, the California Supreme Court denied review (Lodgment 8).

On June 27, 2012, petitioner  filed this Petition, raising one claim.  A Return was filed on August 22, 2012.   Petitioner filed a Reply on September 17, 2012. The parties have consented to jurisdiction of the Magistrate Judge.

## III.  **STANDARD OF REVIEW**

The standard of review applicable to petitioner's claim herein is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> "An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
>  adjudication of the claim–(1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2) resulted in a decision
> that was based on an unreasonable determination of the facts in light of the
> evidence presented in the State court proceedings."

2

Under the AEDPA, the term "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); see also Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("clearly established Federal law" consists of holdings, not dicta, of Supreme Court decisions "as of the time of the relevant state-court decision").  However, federal circuit law may still be persuasive authority in identifying "clearly established" Supreme Court law or in deciding when a state court unreasonably applied Supreme Court law.  See Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir.), cert. denied, 531 U.S. 944 (2000).

A state court decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, supra, 529 U.S. at 413; Woodford v. Visciotti, 537 U.S. 19, 24-27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).  A federal habeas court may not overrule a state court decision based on the federal court's independent determination that the state court's application of governing law was incorrect, erroneous or even "clear error."  Lockyer, supra, 538 U.S. at 75.  Rather, a decision may be rejected only if the state court's application of Supreme Court law was "objectively unreasonable."  Id.; Woodford, supra; Williams, supra.

## IV.  MARSDEN HEARING

At the time set for sentencing, petitioner filed a letter with the Court requesting a Marsden hearing.  (Lodgment 2 at 3 CT 530; Sup. CT 2-3).  In his letter, petitioner asserted his attorney was refusing to file a new trial motion.  Petitioner additionally identified the following grounds requiring the trial court to appoint new counsel, all of which revolved around trial strategy: 1) counsel had refused to allow him to testify; 2) counsel had refused to call witness Keyona West to provide alibi testimony; 3) counsel

1   had refused to call Michelle Nicholes from the Department of Justice to provide photos

2   and evidence regarding the gun that was recovered; 4) counsel had refused to call Deputy

3   Hurian to provide testimony that he recovered a silver handgun from Marcelles Oliver;

4   and 5) counsel had refused to call Genesis Guerrero regarding her statement that she

5   knew the person who pointed the gun at Roberto Lareos.  (Lodgment 2 at Sup. CT 2-3).

6        The trial court held a hearing on petitioner's <u>Marsden</u> motion.  (Lodgment 1 at 3A

7   RT et. seq).  The trial court first identified the various claims petitioner raised in his letter

8   to the court.  (Lodgment 1 at 3A RT 532-533).  The trial court then discussed each point

9   with petitioner's counsel, Mr. Markan.  Petitioner's counsel first indicated he did not

10  intend to file a motion for a new trial because there was no sufficient basis for such a

11  motion to be filed.  (Lodgment 1 at 3A RT 534-535).

12       With regard to whether he refused to allow petitioner to testify on his behalf,

13  petitioner's counsel stated that petitioner had prior offenses which would amount to

14  moral turpitude.  Additionally, he did not want petitioner to testify because the

15  prosecution would be able to introduce "gang testimony and gang information," which

16  would become admissible as part of the prosecution's rebuttal case.  (Lodgment 1 at 3A

17  RT 535-536).   Petitioner's counsel indicated he believed the prejudicial effect was "so

18  substantial" that it was not worth the risk of petitioner testifying. (Lodgment 1 at 3A RT

19  536).  Petitioner's counsel stated that at no time during trial did petitioner specifically

20  indicate that he wished to testify.  (Lodgment 1 at 3A RT 536).

21       Petitioner's counsel stated he did not call Keyona West as a witness because given

22  the state of the testimony at trial, counsel believed "it was the stronger argument" to

23  attack the inconsistent identifications and versions of the events testified to by the various

24  witnesses. (Lodgment 1 at 3A RT 537).  Additionally, West's testimony that petitioner

25  was living with her would allow petitioner to be impeached with his statement to police

26  that he was homeless.  (Lodgment 1 at 3A RT 538).  Counsel also believed West would

27  be impeached regarding her bias and motive based on statements she made in jail calls to

28  petitioner.  (Lodgment 1 at 3A RT 539).

1   Further, petitioner's counsel stated he did not call the witness from the Department

2   of Justice because it was stipulated that the gun casing and bullets were not found in

3   petitioner's possession.  The court noted that it was "uncontested" (Lodgment 1 at 3A RT

4   540).  Petitioner's counsel also believed that calling this witness could open the door to

5   testimony regarding the concept of "the gang gun," and therefore "the risk was too great."

6   (Lodgment 1 at 3A RT 542).

7   Petitioner additionally asserted that the transcript of his jail phone calls was

8   incorrect; however, petitioner's counsel noted he listened to the phone calls, reviewed the

9   transcripts, and believed the transcripts were accurate.  The court further noted that the

10   jury was instructed that the transcript was not evidence. (Lodgment 1 at 3A RT 545-547).

11   Regarding his alleged failure to call Genesis Guerrero to testify that she knew the

12   person who pointed the gun at Roberto Lareos, petitioner's counsel noted that Guerrero

13   was not present at the time of the crimes and her statement was based on hearsay and

14   would be inadmissible. (Lodgment 1 at 3A RT 547).

15   Lastly, petitioner's counsel explained that he did not file a sentencing brief in this

16   matter because he wished to address sentencing issues orally. (Lodgment 1 at 3A RT 549-

17   550).

18   The trial court indicated that petitioner's counsel "did a very good job presenting

19   the strongest case that he could" under the circumstances, noting that counsel made a

20   "strong argument" regarding the identification of petitioner. (Lodgment 1 at 3A RT 552).

21   The court agreed with the prosecution's explanation that West's testimony would have

22   hurt petitioner's case.   (Lodgment 1 at 3A RT 553).  The court further noted that had

23   petitioner testified, he would have been impeached with his prior convictions which

24   would have hurt his credibility. (Lodgment 1 at 3A RT 554-555).

25   The trial court denied petitioner's Marsden motion, concluding that petitioner's

26   counsel provided adequate representation. (Lodgment 1 at 3A RT 556).

27

28   **V.  DISCUSSION**

1      1.  <u>Legal Authority</u>

2      In conducting federal habeas review of a claim directed to the denial of a motion

3  for substitute counsel, the question is not whether the trial court abused its discretion in

4  denying the motion, but rather whether "the conflict between [the petitioner] and his

5  attorney had become so great that it resulted in a total lack of communication or other

6  significant impediment that resulted in turn in an attorney-client relationship that fell

7  short of that required by the Sixth Amendment." <u>Schell v. Witek</u>, 218 F.3d 1017, 1026

8  (9th Cir. 2000).  When a complaint about counsel is made, the Sixth Amendment requires

9  that the trial court make a thorough inquiry into the reasons for the defendant's

10  dissatisfaction.  <u>Id.</u> at 1025.

11

12      2.  <u>California Court of Appeal Opinion</u>

13      When petitioner raised this claim on direct appeal, the California Court of Appeal,

14  found that there was no authority requiring appointment of separate counsel to aid a

15  defendant in a <u>Marsden</u> hearing. The court also found that the trial court listened to and

16  evaluated petitioner's claims against his trial attorney. (Lodgment 6).

17

18            **VI. <u>FINDINGS AND CONCLUSION</u>**

19      The Court concurs with the California Court of Appeal's reasoning and

20  conclusions.  The record here reflects that the trial court conducted a full hearing on

21  petitioner's motion; that petitioner was afforded the opportunity to fully voice his

22  complaints about his counsel at the hearing; that the trial court fully inquired into each of

23  petitioner's complaints; and that the trial court considered petitioner's counsel's

24  responses.

25      On this record, the Court finds that the trial court satisfied its obligation to make a

26  thorough inquiry into the reasons for petitioner's dissatisfaction with trial counsel.  The

27  Court further finds that petitioner has failed to show that, "the conflict between him and

28

his attorney had become so great that it resulted in a total lack of communication or other significant impediment."

As found by the California Court of Appeal, petitioner's complaints against his counsel stemmed from his disagreements with his counsel over strategic trial decisions. See Schell, supra, 218 F.3d at 1026 n.8 (quoting Brookhart v. Janis, 384 U.S. 1, 8, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) (Harlan, J., dissenting in part))("'[A] lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval.'"); United States v. Smith, 282 F.3d 758, 763 (9th Cir. 2002)(affirming district court's denial of motion for substitute counsel based, in part, on the fact that the disagreement between defendant and counsel was about "strategic purposes."). Petitioner has neither alleged nor shown that the strain in his and his counsel's relationship resulted in a total breakdown of communication or a significant impediment. Moreover, as found by the California Court of Appeal, there is no indication in the record that petitioner's counsel was not able to competently represent petitioner. See Morris v. Slappy, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983)(The Sixth Amendment requires competent representation and does not guarantee a meaningful relationship between a defendant and counsel); King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992). Because no United States Supreme Court decision requires that separate counsel be appointed to represent a defendant in a Marsden-type motion, petitioner's claim must fail. Moreover, petitioner's claim fails under a Schell analysis.

///

///

///

**CONCLUSION**

1        For the foregoing reasons, the Petition is dismissed with prejudice.

2    DATED: January 10, 2013

 

 

 

 

 

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE